# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

March 5, 2019


Honorable James D. Peterson
United States District Court Chief Judge
120 North Henry Street
Madison, Wisconsin 53703

> Re:     *United States v. Peter Jewell-Reigel*
>          Case No. 18-cr-146-jdp

Dear Judge Peterson:

In anticipation of sentencing and in support of a five-year sentence, concurrent to his state sentence, the defense files this sentencing memo and attached letters of support.

Like most (if not all) twenty-year-old males, Peter is an idiot. His IQ is fine and he's, in fact, quite bright; but when it comes to using good judgment, that's another matter. There are two ways to look at this case the first is the obvious one: in early August, with a lot of hormones clouding his judgment, Peter was online playing a game called Wizard 101. It was a game he'd been religiously playing for eight years. From the discovery, there are hundreds and hundreds of pages of chats (in 8-point font) with the other players—the chats are both mindless and anodyne. Most involve a good spell having been cast or one person or another bragging about what a dominate wizard that person is—a virtual Gandalf the White.

It's only on August 1, that he runs into a female-wizard avatar and starts chatting with her. She compliments his skills: he praises hers. The amazing part of what follows is that what started as a virtual chat about wizards and their relative abilities, quickly devolved into lurid sex talk—chats that are so graphic and misplaced (it's clear neither has any real idea of what they are talking about) that they fall somewhere between the comical and the horrific. It's comical because they are chatting 1500 miles away from each other about some weird sexual fantasy that both know will never happen. It's horrific because they are chatting 1500 miles away from each other about some weird sexual fantasy that both know will never happen, and she is 12 years old.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -2-

        So the first way to view this case is this: Peter was playing his Wizard 101 online game and he met a girl and there it quickly devolved into an intense sexual conversation, where pictures were asked for and exchanged. In his mind it didn't matter if the female wizard was 42 or (sadly) 12; he was just excited to talk about sex with a girl. That is, he wasn't targeting minors, and he wasn't engaging in any of the behavior that really scares us as a society. He didn't pose as a minor trying to lure a child; he didn't groom the girl; he didn't coerce her or try and blackmail her to get pictures—in fact, little persuasion was needed on either's part. And when she hesitates because her parents took her phone away, Peter's polite and clear: if she doesn't want to that's no problem, they can keep talking about the spells that they're casting on the other players. *See* PSR ¶ 12.

        Looking at the case that way, then we are dealing with a crime that is more than adequately punished by 5 year's imprisonment. This is less the type of crime that Congress sought to punish with these stiff mandatory minimums and more a sad reflection of how sexualized our society has become, and the most incomprehensible of all fads: sending casual acquaintances intimate photos.

        Indeed, 96% of the PSR fully supports that view of the case and placing the sentence squarely at 5 years concurrent. But then there's that 4% of the PSR that would naturally give the Court some pause. There's a lot of smoke in these two paragraphs. PSR ¶¶ 57–58. Smoke that suggests Peter is a more nefarious character than he seems and what the letters in support portray him as. Those paragraphs in the PSR make this case a little tougher, and make my job a lot harder. Indeed, they seem to suggest that Peter should have learned some hard lessons early on in his sexual development (namely, avoid anyone under 18) and that those lessons should have taken root. Thus, the fact that he didn't abide by that rule means maybe there is something else going on here, something that calls for greater punishment.

        The Court can't ignore those paragraphs, but it's worth diving a little deeper into them before thinking that they should call for greater or consecutive punishment. So Peter's first "wake-up" happens when he is 15. He has a girlfriend and they are sexually active. That happens. Her parents don't want their daughter dating Peter. She eventually runs away and goes to Peter's house. It's summer time, and his parents are gone during the day, so she's able to hide in his room . . . for three days. The cops are called and they go to his house to try and find her. He says she's not there, and so the cops search elsewhere for her. Her parents are, of course, concerned and so is the community. Pictures are posted and people are searching everywhere for her. Eventually they go back to Peter's house two more times until they demand to actually search it, and the police find her hiding in his closet.

        Everyone knows that at that point all hell is breaking loose. Her parents must have been beyond pissed. The cops have been searching, enlisting help, and putting off solving actual crimes

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -3-

to look for her. And they've been lied to (three times!) by some 15-year-old kid who thought he could hide his girlfriend in a closet. As a result of him lying to the police, Peter is arrested and he spends three days in juvenile detention, which was probably easier than facing his parents, who were likely just as mad as the cops. Three days in juvenile detention is possibly a little harsh, but not outside the realm of reason.

For her part, the girl defuses the situation with a story of woe: she's not a runaway, who wanted to be with her boyfriend, she's a sexual-abuse survivor and a kidnapping victim at that. Read paragraph 64 against that backdrop and it takes on a different tenor. What's more, anticipating that this would be an issue at sentencing, I got a copy of Peter's file and all the discovery from that case. Fortunately, the Facebook posts, accounts of friends, text messages, and other records contradicted the young lady's story. So Peter's case was let go with the 72 hours he'd already spent in jail.

A year goes by and Peter has a girlfriend, EKH. From all accounts, it was a dysfunctional relationship and Peter's mom made him break it off. In fact, she texted the girl that it was over and to leave her son alone. After that, EKH complained to the police that Peter had hit her. Her initial complaint included "him pinning her down and lifting her shirt to expose her stomach; walking on her back which caused her pain; pushing his finger into her stomach that caused pain; and pushing her toward his brother while his brother pushed her back causing her to be shoved back and forth between the two of them." PSR ¶ 57.

All of that sounds like wrestling and horseplay, the sort that couples who aren't having sex tend do. Thankfully for Peter, this all happened at his house and was witnessed by his parents and his brother. The problem for Peter was that Wisconsin's battery statute is very slight and captures merely causing mild discomfort. Meaning: any discomfort from unwanted touching is enough to satisfy the definition, so long as DA is willing to charge it. And for some reason, Peter's attorney advised the family to take a probation deal. So he did.

The problem with that was Peter was going into his senior year with a probation officer. Now, at this point, Peter should have heeded his parents' advice: stay away from girls—all of them. Talking to his parents, they did a lot to that end. Conversations, counseling, filters on the phone and the family computers, but a senior in high school is hard to contain and hanging out with a person of the opposite sex doesn't have to happen at home. To his credit, Peter listened to his parents—for a time. So he went through his senior year focused on school, but then prom came around and there was an attractive sophomore who he'd sometimes talk to and they decided to go together, as friends. The parents interceded but he was adamant: they were just going as friends. Sadly, parents can only do so much.

Eventually, one thing leads to another and the senior and the sophomore start being more than friends. And the cops (for some reason) take notice and as a result of the cop's interest so

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -4-

does his probation officer. Thus a scene that is repeated throughout high schools in America every year (senior-sophomore dating) brings charges of sexual assault of a child and results in Peter's probation being revoked—probation that he probably never should have been on. He ends up doing six months in county jail. So while most spend the summer after their senior year preparing for college and saving some money, Peter spent it in county jail. He was, in fact, in jail when the rest of his class walked across the stage at graduation.

In the abstract, this should have been the final straw for Peter. We should expect him to rise up, shake it off and get on with his life. But whether it was the betrayal of friends or the feeling of shame, he had the opposite reaction. He grew depressed. And he gave up a bit. He still worked at Arby's and did a good job there—the letter from his boss speaks to that fact: he worked hard. But he didn't have contact with his friends, they were off doing other and better things, and he isolated himself, just retreating deeper into video games. To his credit, Peter didn't drink or use drugs; he just stayed in his room, in his parents' basement, and escaping from people by playing his virtual on-line world of multi-player gaming.

It's there, amid his escape from people that he met KV1. Again, it wasn't that he was on-line playing Wizard 101, looking to lure a minor or really anyone. He was there casting his spells and killing trolls. There, unfortunately, he wasn't vigilant and the chance to talk with a girl and see some bare breasts (and more) overcame his better judgment. Indeed, while it's very likely that he would never have spoken to, let alone approached KV1 face-to-face, for some reason the dynamics of the internet and being apart lowered the barriers of good sense. To be clear: the defense is not for one moment saying that it isn't criminal—it is. But the Court has to weigh what was the object, intention, and circumstances of this crime and they are not the normal set of circumstances that come with this offense.

What's more, looking at Peter's behavior *after* this crime gives some insight into his character and thinking and how this was not him trying to groom the minor; instead, it was a reflection of his own immaturity. First, when KV1's father calls him, Peter doesn't hesitate: he will stay away from his daughter. And he has no further contact with her. When he's arrested, he's polite and he gives over his phone, and he cooperates with the officers.

But more than anything, this Court should look at Peter's own thoughts on where Peter was emotionally this summer. After his arrest, his parents found a suicide note and its worth reading for three reasons: First, it affirms the sense that this is a young man, who is making bad decisions that he truly regrets, and he is not an incorrigible criminal. Second, it shows that before this incident, he really was trying to piece his life together after the 6 months he spent in jail, including working and doing well at work. And third, it shows the despair that he feels over his choices and the consequences he's suffering because of them.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -5-

So I guess this is where I say goodbye. I leave all my stuff to my family + ~~████~~ my best friend Chris Yadro. I hate that my life turned out this way. I tried & I tried to accept it and still find the peace and happiness telling myself "my time will come ones day". Sadly I think that day is just to far off. I've slowly been losing my will to keep on fighting. It's no one's fault but my own. Its been 9 minuts since I started the car maybe 6 since I started listening too Coldplay. Man I've never been able to relate to a song like Coldplays "Trouble". Every time I tried to enhance life or well settle down I only made things worse. The problems I carry.. The demons on my back. I feel so alone. This feeling of being done. Its the worst.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -6-

Now it's true I had good
times. recently my boss has
been congratulating me on being
more of a boss myself. New
workers ask me if I'm a manager
and some minors tell me I should.
I manager seemed against it because
I don't care enough. Maybe he
could tell something was up with me.
Regardless he was right. I didn't care
enough. 21 minutes & something's feeling
off inside my head. It kind of hurts.
Coldplay is playing everything's not lost
Ironically... It's kind of funny. Makes
me want to get out. But I'd
be chasing after a fantasy. Here
now i feel relaxed. And I am, happy.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
March 5, 2019
Page -7-

All of this speaks directly to the fact that five years is sufficient punishment to address this crime and this offender. Here's why: his crime is not one of compulsion or some sinister plan to get pornographic pictures that he'd then share with some pedophiles online. He didn't have any other child pornography on his devices. He doesn't have an interest in children. He simply does not have the good sense to stay away from post-pubescent girls in person and online. The last brush with the law kept him at home and away from physical contact with underage girls; it's likely that this sentence will do the same when it comes to online contact.

Indeed, whatever might be affected by the nature of the sentence imposed and Peter's experience with prison will be complimented by the reality that when he gets out Peter will be 25. At that point, we know that he'll have better judgment. Experience and the Supreme Court agree on that point: "youth is more than a chronological fact. It is a time of immaturity, irresponsibility, impetuousness, and recklessness. It is a moment and condition of life when a person may be most susceptible to influence and to psychological damage. And its signature qualities are all transient." *Miller v. Alabama,* 132 S.Ct. 2455, 2467 (2012) (quotation omitted); *see also Graham v. Florida,* 560 U.S. 48, 68 (2010) (that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"). Not only will Peter's brain grow and change, so too will his taste in women. There is nothing about Peter that suggests he's particularly attracted to minors and that he would not have been just as hopeful to get nude photos of KV1, if she had been 22 or 32 or 42, as opposed to 12.

Finally, this Court should also take solace in the fact that this sentence comes with mandatory supervised release and conditions that will ensure that while it doesn't *seem* like Peter will want to ever talk to a minor again, now he won't be able to. That is, when it comes to what is a sentence that is sufficient but not greater than necessary 60 months fits the bill. It provides just punishment; it provides specific deterrence; and it protects the public. It is, in fact, the appropriate sentence for a twenty-year-old who was not targeting kids online, but who was for all intents and purposes being an idiot.

Thus, the defense submits that five years concurrent to his state sentence is an appropriate sentence.

Sincerely,

*/s/ Joseph A. Bugni*

Joseph A. Bugni
Associate Federal Defender