HURLEY BURISH, S.C.  
ATTORNEYS

33 EAST MAIN STREET, SUITE 400  
Mailing Address:  
POST OFFICE BOX 1528  
MADISON, WI 53701-1528

| | | |
|---|---|---|
| Jonas B. Bednarek | Andrew W. Erlandson | Tel. (608) 257-0945 |
| Cricket R. Beeson | Stephen P. Hurley | Fax. (608) 257-5764 |
| Marcus J. Berghahn | David E. Saperstein | www.hurleyburish.com |
| Joseph A. Bugni | Daniel J. Schlichting | Author's e-mail: |
| Mark D. Burish | Catherine E. White | jbugni@hurleyburish.com |
| Peyton B. Engel | | |

July 24, 2024

Honorable James D. Peterson  
United States District Court  
  for the Western District of Wisconsin  
120 N. Henry Street  
Madison, WI  53703

      Re:    ***United States v. Peter Jewell-Reigel***  
              Case No. 18-cr-146-jdp

Dear Judge Peterson,

      In anticipation of the supervised release hearing, I am submitting this letter to let the Court know where things stand. I have previously communicated this with the government on Monday, but I waited to see if Mr. Jewell-Riegel's letter to the Court would arrive. It hasn't. So I am filing this to the Court now, and there are four points that need to be made.

      First, we will not contest the allegations in the 12(c) and we agree that revocation is appropriate.

      Second, we will recommend a sentence of a year and a day with supervision to follow.

      Third, this is a serious violation, and prison is appropriate. I would offer this brief reflection after talking with him repeatedly and with his family, who will be there at the hearing. When Peter got out of prison, he had some good things in place to help him succeed: he was working, he was making decent money, he was saving it, and had a nice apartment. But he struggled mightily with being on the registry, wearing the bracelet, and realizing he'd never get off the registry. He did not cope well with the reality of being

Hurley Burish, s.c.

Honorable James D. Peterson
July 24, 2024
Page 2

a sex offender. I am sure that there were other factors and problems, but those seem to be the biggest. It's fair to ask: why he'd choose to talk and meet with a minor during this time of angst? There is no good answer. In this Court's words (about felons being near guns), minors should be his kryptonite. Yet he did meet with a minor. There was no sex, but it's still beyond what's demanded of him.

What happened next speaks to his mental state and his immaturity and lack of perspective about life. Upon being called in to talk with his probation officer, he freaked out, jumps out of his parents' moving car, cuts off the bracelet and runs, living homeless in Texas before he decides it's better to commit suicide than face going back to prison. That is, although he didn't violate any law, he chose to run, live homeless, and potentially die rather than meet with his probation officer.

I say that all because it matters. This sentence is not about punishing him so much as helping him see that as hard as life will be, he's so very, very young and should embrace that he has to figure out how to live within the strictures that (for better or worse) society has cast on him because of his prior criminal behavior. To that end, I submit a sentence of a year and day is more than appropriate. It's a stout sentence, but it's not needlessly long. What's more, it recognizes that he also has a revocation in state court and charges related to the bracelet being cut off and leaving the State. Those will likely be lengthy stays.

Fourth, I need to put one more thing out there and it's in regard to the psych evaluation that the defense hoped to have done on him. I put this hearing off because I wanted him evaluated---not so much for this hearing but for his life going forward. If there is some insight into why organically or otherwise, he'd choose to end his life rather than face his probation officer, then it would be helpful for his probation officer and family to know that. More information is always better.

The evaluation testing was completed after I left the federal defender and others in my former office communicated with Dr. Elliot, who did the evaluation. They told her not to write a report because her insights were limited to whether he'd experienced racism as a child and that he didn't have a personality disorder, which were not the questions I wanted insight on.

I was then contacted about taking back Jewell-Riegel's case, and (of course) agreed to. But I never spoke with Dr. Elliot. With this situation, I was stuck in an awkward position. I could not compel the Federal Defender to pay for a full report or have Dr. Elliot

H‍URLEY B‍URISH, S.C.

Honorable James D. Peterson
July 24, 2024
Page 3

address what I thought was the real issue. I could not ask my current office to pay for it. And I did not want to petition this Court for further funds, given that Dr. Elliot did not have anything to offer. In addition, the third option would have necessitated further delay and that is not in Jewell-Riegel's best interest. So I decided to proceed with sentencing—hopeful that a helpful psych-evaluation will be done in the State court.

Thank you for your attention to this matter.

Sincerely,

HURLEY BURISH, S.C.

*Electronically signed by Joseph A. Bugni*

Joseph A. Bugni

JAB:mns
F:\-clients\Jewell-Reigel Peter\Correspondence\Judge Peterson 24-07-24.docx